## WALES-RIGGS PLANTATIONS *v.* CASTON.

### Opinion delivered December 23, 1912.

1. CORPORATIONS—AUTHORITY OF OFFICERS.—Where a business corporation impowers its president to act as general manager, or permits him to act as such for a length of time, it is estopped to deny that its president has the powers with which it has qualified him, or which it has customarily permitted him to exercise. (Page 645.)

2. SAME—AUTHORITY OF AGENT.—Where the president and general manager of a corporation held out a certain person as authorized to make contracts on behalf of such corporation, contracts made by such person on behalf of the corporation will bind it. (Page 646.)

Appeal from Cross Circuit Court; *Frank Smith,* Judge; affirmed.

*Charles E. Robinson,* for appellant.

1.   The transactions and declarations of an agent are not of themselves evidence of his agency. 96 Ark. 510. A party dealing with an agent of a corporation must, at his peril, ascertain what authority the agent possesses, and is not at liberty to charge the corporation by relying upon the agent's assumption of authority. 52 Mich. 87; 19 L. Ed. 173.

2.   The president of a corporation has no authority as such to make contracts or to approve or ratify the making of contracts in the name of the corporation. 84 Ark. 453;

Kirby's Dig., § 841; 92 Ark. 332.   His authority to contract
or ratify contracts must come from the board of directors
and this fact must be proved.   It will not be presumed.   80
Ark. 67; 62 Ark. 33.

3.   Before appellant can be held liable for any act of
Mrs. Cross, it must be made to appear that it actually author-
ized her to do the act, or that it is estopped to deny her author-
ity by having knowingly permitted her to act, or by ratifying
her act, or by knowingly receiving the benefits thereof.   62
Ark. 37, 42; 3 Cook on Corp. 2224, 2234, 2277.

*L. C. Going,* for appellee.

1.   There was no plea nor contention that the acts of the
president of the appellant were *ultra vires.*   If there had been
such plea, the burden would have been on the appellant to
prove it.   Thompson on Corp., § § 7617, 7619; 80 Ark. 67.

2.   The acts of Mrs. Cross were in line with the ordinary
duties of agents engaged in renting and handling land, and it
can not be said that her acts were beyond the scope of the
corporate powers of appellant.   Taylor on Corp., § 193.

3.   Even though, under the terms of the contract with
the corporation, Mrs. Cross may have been limited in her
powers, yet strangers to that contract with no knowledge
of its terms would not be bound by the limitations upon the
agent contained therein.   96 U. S. 84; 12 Cush. 1; 165 Mass.
565.   See also, 49 Ark. 320; 48 Ark. 138; 42 Ark. 97.

HART, J.   This was an action instituted by attachment
to enforce a landlord's lien for rent, in which appellant was
the plaintiff, and appellee the defendant.   The rent contract
was in writing, and the amount of rent was evidenced by a
promissory note for $141.50, given by appellee to appellant.
Appellee admitted executing the contract and note, but claimed
that both were abrogated by a subsequent parol contract
whereby he rented less land for a rental of $50.   The parol
contract was claimed to have been made by appellee with
Mrs. G. K. Cross as agent for appellant.

Appellee filed his counterclaim in the sum of $80 for dam-
ages for noncompliance with the contract.   The justice of
the peace dismissed the attachment, and found that appellant
was entitled to recover of appellee in the sum of $50 for its

rent, and that appellee was entitled to recover damages against appellant in the sum of $80, leaving a balance in favor of appellee in the sum of $30, for which judgment was rendered against appellant.

On appeal in the circuit court the case was tried *de novo* before the court sitting as a jury, and the same judgment was there rendered as in the justice's court. The appellant introduced the note and written contract sued on. The note was for $141.50, and was due November 15, 1910. The date of the note and written contract was May 31, 1910. On the 18th day of November, 1909, appellant and Mrs. G. K. Cross entered into a written contract wherein it was recited that appellant employed her for the term of one year to act as its agent for the general management of its lands located in Cross County, Arkansas, as provided and stated in the contract. Her duties, among other things, were to secure tenants for the cultivation of the improved lands of appellant in Cross County, Arkansas, and for the enforcement of all contracts and leases in regard thereto. It was provided that she should always act under written orders from appellant, and that all contracts in regard to the lands or leases of same, in order to become binding on appellant, should be in writing and signed by 'Wales-Riggs Plantations, by C. W. Riggs, President.' The Wales-Riggs Plantations was a corporation organized under the laws of New Jersey, April 27, 1899, and C. W. Riggs has been its president since the day it was organized.

He testified that Mrs. Cross had no authority to act for the incorporation except that given her by the written contract referred to above, and that she had no authority to cancel or abrogate any contract made with said corporation, and particularly stated that she never had any authority to cancel the note and contract sued on in this suit. He stated that all contracts were to be submitted to the corporation for signature, and were to be signed 'Wales-Riggs Plantations, by C. W. Riggs, President.' He stated that this had been the invariable rule since the organization of the corporation. He also said: "It has always been perfectly understood by our numerous tenants that no one had authority to make a contract binding on us unless it was reduced to writing and signed by us with the corporate name of its president."

Mrs. Cross also testified that she had no authority to abrogate or change the contract in question, and that she did not do so.

Appellee admitted that he signed the contract and note in question, but stated that he was unable to get any one to furnish him supplies to make his crop with, and that, upon reporting this fact to Mrs. Cross, it was agreed between them that the contract should be abrogated, and a new one was made whereby he rented less land and was to pay rent therefor in the sum of $50. He also testified as to the amount of his counter-claim, but, as this is not in dispute, there is no use to abstract the testimony upon that question. On cross examination he stated that previous to making the contract he had a talk with C. W. Riggs about what Mrs. Cross was there for, and that Captain Riggs said "any business that Mrs. Cross does is legal." Another tenant of appellant testified that Captain Riggs told him that whatever arrangements Mrs. Cross made about renting the lands was satisfactory to him; that she was his agent.

It was admitted by appellant that J. H. Hammett, if present, would testify that Mrs. G. K. Cross from and after the month of October, 1909, was the agent of appellant, charged with the duties of making contracts for sale and rent of lands belonging to it, and that he had letters from Capt. C. W. Riggs to this effect.

The court, sitting as a jury, found the facts to be that Mrs. Cross was in fact the agent of appellant with authority to act in the transactions had between the parties to this litigation, and rendered judgment in favor of appellee as above stated.

It is conceded by counsel for appellant that there is evidence tending to support the finding of the court that Mrs. Cross abrogated the written contract and note sued on and made the subsequent contract above referred to. Therefore it is not necessary to discuss this phase of the evidence. It is earnestly insisted, however, that Mrs. Cross had no authority to abrogate or change the contract and note sued on and make a new one for appellant. Counsel for appellant relies on the case of the *Fort Smith Wagon Co.* v. *Baker*, 84 Ark. 453, to support his contention. In that case we held

that the president of a business corporation has no power to enter into a contract whereby the entire *corpus* and business of the corporation is sold to another.   The principle announced is sound, but has no application to the facts of  this case.

The testimony in the case is quite voluminous, and it would have extended the opinion unduly to have set it out in detail.   It is evident, however, from the testimony of C. W. Riggs himself that all contracts executed by appellant should be signed by himself, and that he had authority to make contracts for his company.   In addition to this, the testimony of tenants on the place shows that he came there and exercised control and superintendence over the affairs and business of appellant.   Mrs. Cross in her testimony speaks of talking with C. W. Riggs about the affairs of the company and getting directions and instructions from him about what she should do.   It is a very common custom now for the president of a business corporation to be its active manager, and we think the court might well have found from all the facts and circumstances adduced in evidence that C. W. Riggs was not only the president of appellant corporation, but was also the active manager of its business.   The acts of a president done in the management of the business and within the scope of his authority are held to be the acts of the corporation itself.   2 Thompson on Corporations, (2 ed.), § 1465, page 515; *Ib.* § 1493. The same author in section 1491 says:

"Third persons and strangers dealing with the president of a corporation under ordinary circumstances, and especially where he has the management and control of the business, are protected.   The law shields such persons in so many different ways as to make it comparatively, if not absolutely, safe to deal with the president of a corporation under such circumstances.   In the first place, where a corporation qualifies the president with the power of the general management of the corporate affairs, or where it permits him to act as general manager for a length of time, it is estopped from denying, in such instances, that its president has the powers with which it has qualified him, or which it has customarily permitted him to exercise.   Hence, in any conflict between such third persons and the corporation, it is sufficient to prove the president's authority in the usual way of proving the author-

ity of other agents, either that he was especially appointed to conduct the business or that the corporation held him out to the public as possessing the power which he actually exercised.''

The appellee in this case testified that a short time before he made the contract with appellant he had a talk with C. W. Riggs about the authority of Mrs. Cross, and that Captain Riggs told him any business Mrs. Cross did was legal. Another tenant on the place testified that Captain Riggs told him that whatever arrangements Mrs. Cross made concerning the renting of the land was satisfactory to him, and that she was his agent.

It was admitted that J. H. Hammett would testify, if present, that Captain Riggs had written to him that Mrs. Cross was the agent of appellant charged with the duty of making contracts for the rent and lease of lands of appellant. As we have already seen, the testimony abundantly establishes the fact that Captain Riggs himself had the authority to make contracts for the rent and lease of lands of appellant. Therefore his admissions and representations concerning the authority of Mrs. Cross to make such contracts was within the scope of her authority and concerning matters intrusted to her, and are therefore binding upon appellant. 3 Cook on Corporations, § 726, page 2363; 2 Thompson on Corporations, § 1479, page 544.

The judgment will be affirmed.

SMITH, J., disqualified.