James Ray ROBERTSON *v.* STATE of Arkansas

CR 73-145                                507 S.W. 2d 513

Opinion delivered April 8, 1974

*Johnson & Johnson*, by: *Cecil E. Johnson Jr.*, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *Richard Mattison*, Asst. Atty. Gen., for appellee.

LYLE BROWN, Justice. James Ray Robertson was convicted of first degree murder and sentenced to life imprisonment. Court-appointed counsel filed a brief in which he listed five points for reversal. Appellant sought to have his counsel dismissed and prayed that he be permitted to file his own brief. We did not discharge counsel but we did permit appellant to file a brief purportedly drafted by him. He lists seven points for reversal. Also, in accordance with Act 333 of 1971, Ark. Stat. Ann. § 43-2725 (Supp. 1973), we have reviewed all objections made by appellant during the course of the trial to determine whether there were prejudicial errors in the rulings on those objections. See *Rorie* v. *State,* 215 Ark. 282, 220 S.W. 2d 421 (1949).

It would serve no useful purpose to recite an abstract of all the evidence. Viewed in the light most favorable to the State, as we must do, the evidence overwhelmingly showed that on the night of March 23, 1973, a party was in progress at a place of business commonly known as "The Cafe" in Ogden; that beer was being freely consumed by some of the many patrons, including appellant; that at the time appellant approached the cafe there were a considerable number of people gathered outside witnessing a scuffle between two friends, David Lee Grimes and Willie Walker; that appellant turned away and as he started for his car, made a remark to the effect he would stop the scuffle when he returned; that within minutes he returned to the scene and fired a shot in the air; and that he then "leveled down" on David Lee Grimes, who was backing away, and fired a fatal shot into Grimes' forehead. Some of the other evidence will necessarily be referred to in discussing the many points for reversal.

In the brief filed by appellant's counsel there are five points for reversal. The first point is that as a matter of law the court should not have submitted to the jury the question

of first degree murder. It is urged that "there is a lack of evidence of the part of the State to show malice, willful, deliberate, premeditated killing, or specific intent to kill the deceased". The State's evidence related that appellant frequently engaged in target practice with a pistol; that shortly before the homicide appellant made the statement that he was "going to shoot me somebody before the night is over"; that appellant shot once in the air and then shouted "I take him", whereupon appellant "leveled down" on the deceased, who was unarmed. That evidence, along with other factors which could be enumerated, was certainly sufficient to support a finding of a willful, deliberate, malicious, and premeditated killing. *Seward* v. *State*, 228 Ark. 712, 310 S.W. 2d 239 (1958). The necessary elements of premeditation and deliberation may be inferred when the circumstances clearly warrant such an inference. *Walker* v. *State*, 241 Ark. 300, 408 S.W. 2d 905 (1966). Appellant strongly urges that there was no showing of ill will between appellant and deceased, hence he concludes there could be no malice. A showing of ill will for the deceased was not necessary. In the sudden killing of a human being with a deadly weapon and without provocation, malice may be implied. *McAdams* v. *State*, 25 Ark. 405 (1869).

Appellant next contends that the verdict of guilty of first degree murder was contrary to the evidence. We do not agree. Numerous eye witnesses testified that they saw appellant shoot David Grimes with a pistol. The autopsy showed that death was caused by a pistol wound. One witness testified that appellant was heard to say he was going to shoot someone that night. A number of witnesses testified that Grimes did not provoke appellant, and that Grimes in fact backed away when appellant fired the first shot in the air. Appellant gave Sheriff Thrash the pistol with which Grimes was shot when the sheriff asked for the death weapon.

The third point advanced is that the court erred in not giving an instruction on involuntary manslaughter. There is no merit in this argument. "Any supposed error for failure to charge as to involuntary manslaughter was rendered harmless by the fact that the jury convicted Newsome of second degree murder." *Newsome* v. *State*, 214 Ark. 48, 214 S.W. 2d 778 (1948).

The fourth point is that the State's proof does not es-

tablish the allegations of the information. We are not told in what manner the proof was insufficient, no argument being advanced on this particular point. However, the record shows proper venue, the time and place of the killing and the corpus delicti, and as we have previously pointed out, the record contains substantial evidence of first degree murder.

The final point advanced by appellant's counsel is that the punishment of life imprisonment is "barbarous, harish, cruel, and inhumane and should be reduced to twenty-one years". The quoted statement is based on the argument that the proof does not warrant a first degree murder conviction. From what we have heretofore said about the proof it should be manifest that we do not believe the point to have merit. We have no authority to reduce punishment in a case where the verdict is sustained by the evidence.

Thus far we have discussed the points raised in the brief filed by counsel for appellant. As heretofore stated, we permitted appellant to file his *pro se* brief. We proceed to discuss those points.

A witness testified that appellant was heard to say he was going to shoot someone that night. This was not hearsay, as claimed by appellant. "Besides", says appellant, "this is a weekend expression of most Black people". The weight to be given the expression was for the jury.

Appellant argues it was improper to permit witnesses to testify that he threatened a church congregation in the community with a pistol. Appellant put his general reputation in issue and the court instructed the jury that the testimony should go only to that issue. We see no merit in the point.

Next appellant says a portion of the record shows that his court-appointed attorney acknowledged that he did not competently represent appellant. We have read the excerpt cited us and do not so interpret it.

Appellant states he was told by certain court officials that if he did not appeal this case, a recommendation would be made after appellant served seven years and that appellant might receive a parole. Appellant attached two letters to his brief to show that the statements were made. Those statements were probably unwise; nevertheless, we perceive

no prejudice because appellant rejected the advice and perfected his appeal.

We have reviewed the objections made by appellant's counsel in the course of the trial and find no prejudicial error in those rulings. There were only three objections during the course of the trial but in deference to defense counsel we should point out that in numerous instances the trial judge did not wait for an objection; the judge quickly admonished the witness not to answer the question. It should also be pointed out that, as reflected by the abstract, appellant's court-appointed counsel was not derelict in the cross-examination of the State's witnesses.

Affirmed.